UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | File No. 2:09-mj-189 |
| EXTRADITION OF: | ) | |
| | ) | MEMORANDUM AND ORDER |
| LON PATRICK RITZO | ) | |

The United States seeks a certification that Lon Patrick Ritzo be extradited to face criminal charges in Canada.  This Court held a hearing on the matter on February 16, 2010.  Based on the documents of record, hearing testimony, and post-hearing briefs, this Court concludes that a certificate of extradition should be issued.

## EXTRADITION PROCESS

Extradition to a foreign country is governed by 18 U.S.C. § 3181 *et seq*.  When a foreign fugitive is found in the United States, the foreign state may submit a formal request for extradition, through diplomatic channels, with certified documentation.  An extradition hearing is then held, at which evidence may be submitted.  If, after the hearing, the judge determines that extradition is warranted, the judge certifies that decision and evidence in support of that decision to the Secretary of State.  The final decision of whether to extradite a fugitive is reserved to the Secretary of State.  *See*, *e.g.*, *In re Extradition of Garcia*, 188 F.Supp.2d 921, 924 (N.D. Ill. 2002).

There is no dispute about the standards governing this matter.

In order to establish that extradition of Ritzo is warranted, the United States, on behalf of Canada, must establish: (1) that a valid extradition treaty between the United States and Canada is in full force and effect, (2) that Ritzo is the person sought by Canada, (3) that the offenses with which Ritzo is charged are covered by the valid treaty, (4) that requirements of "dual criminality" are satisfied, *i.e.*, that the offenses charged are crimes both in the United States and in Canada, (5) that there is probable cause to believe Ritzo committed the offenses with which he is charged, (6) that the United States has submitted required documents, which have been properly authenticated, and (7) that any other treaty requirements have been satisfied. *See*, *e.g.*, *In re Extradition of Ortiz*, 444 F.Supp.2d 876, 882 (N.D. Ill. 2006).

Ritzo resists extradition, asserting that the United States has not satisfied the "dual criminality" element, and that there is insufficient evidence of probable cause.

### FACTS

The extradition complaint asserts that Ritzo, a United States citizen, is charged with five crimes in Canada: sexual assault, sexual touching, invitation to sexual touching, uttering threats, and possession of child pornography.  The first four of the five charges are made in an October 19, 2007 Information filed in Saskatoon, Saskatchewan (Ex. 2 at 7-8), and the fifth charge is made in a January 18, 2007 Information filed in North Battleford,

Saskatchewan (Ex. 2 at 9).  The four Saskatoon charges all involve the same alleged male victim, P.B.

In 2007, P.B., who was then age 17, told Saskatoon law enforcement officers that Ritzo had sexually assaulted him some number of years earlier.  An affidavit of an investigator states that P.B. met Ritzo when P.B. was eight or nine years old, and that Ritzo approached P.B. and a friend at a candy store, and bought them chips and pop.  The affidavit goes on to describe Ritzo taking the two boys to "various places, including arcades, the circus, and McDonald's restaurant." (Ex. 2 at 79).  Other documents state that P.B. reported being sexually assaulted fourteen or fifteen times when he [P.B.] was age seven or eight years old.   The investigator's affidavit provides the following details:

> After many occasions together, [P.B.] went back to the man's apartment.  That then became the pattern - go places then go back to the apartment.  The first few times at the apartment the boys would play airplane video games.   Things then changed; the man began sexual conduct with [P.B.] and [P.]'s friend.  The man touched [P.]'s penis and tried to kiss him. He asked [P.B.] and his friend to masturbate him.  [P.B.] estimates that over the course of the 'relationship' he masturbated the man "about twenty times maybe" (typically to ejaculation) and that the man performed fellatio on [P.B.] three times.  The man "tried to have sex" with [P.B.], but [P.] refused that.
>
> The man gave [P.] money after sexual contact.  For example, on one occasion when [P.B.] needed bus fare home, [P.B.] let the man fellate him.  During at least some instances of abuse, the man also showed the boys child pornography.
>
> He told the boys he would hurt them if they told anyone what was going on.  He said he would kill them.

(*Id.*).  The investigator's affidavit includes some corroboration of

P.B.'s statements.  There is corroboration of Ritzo's identity, of the location P.B. described as Ritzo's residence, and a statement that P.B. had "previously described at least some of what happened to him" to employees at two different youth centers.  (Ex. 2 at 80).  The corroboration does not include statements by any other persons who witnessed the incidents which P.B. described.  One of the other individuals P.B. identified as having been abused in a similar way, D.N., has refused to speak with investigators.  (*Id.* at 80).

The Saskatoon charges allege that all the crimes occurred between June 5, 2001 and March 15, 2002.[1]  (Ex. 2 at 7-8).  The investigator's affidavit states, "The Saskatoon City Police Service has determined that between 05 June 2001 and 15 March 2002, Mr. Lon Patrick Ritzo was a tenant in apartment 1106 at Marquis Towers, the building at the location described by [P.B.]"  (*Id.* at 80-81).  While the affidavit describes confirmation of Ritzo having lived in that building at some time, it is not clear to this Court how the investigators determined specific dates during which he lived there, or the basis for the dates alleged in the Information.

The child pornography charge resulted from a May 5, 2006 search of Ritzo's North Battleford residence, during which his computer and other electronic storage devices were seized.  An

---

[1]During that timeframe, P.B. was eleven or twelve rather than seven, eight, or nine years old.

affidavit of one of the Canadian investigators states that 13,700 "images of children" were found on Ritzo's computer via forensic analysis, and that "many" of those images were "classifiable as child pornography in that they depicted close-ups of children's or young peoples' genitalia, anuses and/or children engaged in sexual acts." (*Id.* at 66).   The affidavit states, as evidence of a "guilty mind," that Ritzo left North Battleford within days of the search of his residence, and that he and his counsel repeatedly inquired about return of the computer.  (*Id*).

The search of Ritzo's residence was prompted by complaints that Ritzo had acted inappropriately toward children at a North Battleford public swimming pool, which led to interviews of young people whom Ritzo had invited to his residence.  One of those young people, J.B., told investigators that Ritzo had showed him computer images of young boys engaged in sexual activity.  J.B. is now deceased.  The affidavit states that two of J.B.'s friends, B.G. and K.B., confirmed or corroborated what J.B. had told investigators.  (*Id.* at 65).

There was also a complaint from a neighbor that Ritzo had taken a child into his home; when police arrived in response to that complaint, Ritzo answered the door with his shirt on inside out.  While police were at his home, another child arrived, wearing only a nightgown.  Both those children, however, denied that Ritzo had acted inappropriately toward them.  (*Id.* at 65-66).

**DISCUSSION**

**Identity**

Although not addressed in his brief, at the hearing Ritzo alleged that evidence of identification was not adequate since it relied on photographic evidence and did not include fingerprint evidence. This Court has considered the photographs that are a part of the record, and is satisfied that Exhibit 3, Ritzo's North Dakota drivers license photograph, depicts the same person identified in the photo line-ups conducted in Canada. (Ex. 2 at 41, 52, and 105).

**Dual Criminality**

The applicable treaty provides:

> Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment.

(Ex. 1 at 16). Extradition treaties are to be liberally construed so as to effect the intention of the consenting states to facilitate reciprocal surrender of fugitives for extraditable offenses. *See*, *e.g.*, *In Re Extradition of Ortiz*, 444 F.Supp.2d 876, 883 (N.D. Ill. 2006). Liberal construction is to be employed because, in extradition proceedings, the court in the requested state "is adjudicating issues inevitably entangled in the conduct of our international relations." *Id.*

The element of dual criminality requires that the United States establish that the alleged conduct is considered criminal

6

under the laws of both Canada and the United States. *In re Extradition of Molnar*, 202 F.Supp. 2d. 783 (N.D. Ill. 2002); *Murphy v. U.S.*, 199 F.3d 599, 602 (2nd cir.1999); *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir.1998), cert. denied, 525 U.S. 853, 119 S.Ct. 131, 142 L.Ed.2d 106 (1998). In establishing that the alleged conduct is considered criminal in the United States, the government can rely on federal statutes, North Dakota state law, or the law of a preponderance of the states. "The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions." *Collins v. Loisel*, 259 U.S. 309, 312, 42 S.Ct. 469, 470-471, 66 L.Ed. 956 (1922). Each element of the offense purportedly committed in a foreign country need not be identical to the elements of a similar offense in the United States, so long as the conduct involved is criminal in both countries. *Matter of Extradition of Russell*, 789 F.2d 801, 803 (9th Cir.1986); *United States v. Saccoccia*, 58 F.3d 754, 766 (1st Cir.1995), *cert. denied*, 517 U.S. 1105, 116 S.Ct. 1322, 134 L.Ed.2d 474 (1996).

Ritzo alleges that none of the charges meet the dual criminality requirement. As discussed below, this Court concludes that each of the Canadian offenses is sufficiently similar to United States offenses to satisfy the dual criminality element.

Sexual Assault

The Canadian offense of sexual assault, section 270 of the Canadian Criminal Code, is committed when a person knowingly commits "unwanted sexual touching."  As described by the Supreme Court of Canada, the crime is committed when the circumstances of the touching are "of a sexual nature, such that the integrity of the victim is violated." *R. V. Ewanchuk*, [1999] 1 S.C.R. 330.  The United States identifies the following counterpart offenses to the Canadian charge of sexual assault: 18 U.S.C. § 2241(c) (sexual act with a person less than twelve years old), 18 U.S.C. § 2243(a) (sexual assault of a minor), N.D. Cent. Code § 12.1-20-03(1)(d)&(2)(a) (gross sexual imposition), and N.D. Cent. Code § 12.1-20-03.1 (continued sexual abuse of a child).

Section 2243(a) is violated when a person knowingly engages in a sexual act with another person, who is more than twelve but less than sixteen years of age.  "Sexual act" includes contact between the mouth and the penis, and intentional touching, not through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to . . . gratify the sexual desire of any person."  18 U.S.C. § 2246(2).  While the elements of the Canadian crime are not identical to those of the federal or state statutes, the conduct described in the supporting evidence would violate United States law, including sections 2241(c) and 2243(a).  The fact that the Canadian statutes may be more inclusive

than the American offenses is not determinative, since Ritzo is not charged with conduct that would be criminal only under the more inclusive Canadian statute. The elements of the United States and Canadian offenses are sufficiently similar to meet the dual criminality requirement.

<u>Sexual Touching</u>

The Canadian statute, section 151 of the Canadian Criminal Code, establishes a felony when a person "for a sexual purpose, touches, directly or indirectly, with a part of the body or with an object, any part of the body of a person under the age of fourteen years." (Ex. 2 at 18). As to the Canadian charge of sexual touching, the United States identifies 18 U.S.C. § § 2244(a)(3)&(a)(5) and N.D. Cent. Code § § 12.1-20-03(1)(d)&(2)(a), & 12.1-20-03.1 as counterpart offenses. Ritzo asserts that the Canadian offense is more inclusive than the United States offense, since the Canadian offense does not limit criminality to touching of genitals, anus, groin, breast, inner thigh, or buttocks, as do the federal statutes.

Under section 2244, unlawful sexual contact is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to . . . gratify the sexual desire of any person." If the Canadian charge did not involve the body parts identified in the United States statutes, Ritzo's overinclusiveness

argument might be meritorious.  Although the language of the
Canadian law is in fact more broad than that of the statutes upon
which the government relies, the conduct alleged would violate
federal and state law, including section 2244.  The United States
has established sufficient similarity to satisfy the dual
criminality element as to the charge of sexual touching.

Invitation to Sexual Touching

     The United States argues that the Canadian charge of
invitation to sexual touching finds counterparts under 18 U.S.C. §
§ 2241(c), 2243(a),  & 2244(a)(3)&(a)(5).  Ritzo asserts that the
Canadian crime is more inclusive than any of the American crimes,
because it criminalizes an invitation to touching any part of the
body.

     The Canadian offense of invitation to sexual touching is
committed when a person invites a person under the age of fourteen
"to touch, directly or indirectly, with a part of the body . . .,
the body of any person, including the body of the person who so
invites . . . and the body of the person under the age of fourteen
years."  (Ex. 2 at 19).  Under section 2244, "abusive sexual
contact" includes a person "knowingly engag[ing] in or caus[ing]
sexual contact with or by another person, if so to do would violate
subsection (b) of section 2243 of this title had the sexual contact
been a sexual act." 18 U.S.C. § 2244(a)(3).  Section 2243 prohibits
engaging in "a sexual act" with another person who has attained the

age of 12 years old but is less than 16 years old, or "attempt[ing] to do so." 18 U.S.C. §2243(a)(1). "Sexual contact" is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to . . . gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

As discussed above, even though the Canadian statute may be more broad than the United States statute, the actions alleged in the Canadian charge of invitation to sexual touching would constitute an attempt to violate section 2244, so the United States has satisfied the dual criminality requirement.

<u>Uttering Threats</u>

It is the position of the United States that the Canadian crime of uttering threats is sufficiently similar to 18 U.S.C. § 1512(a)(2) (witness or victim tampering) and N.D. Cent. Code § 12.1-17-04(1) (terrorizing). Ritzo asserts that since the Canadian law does not include an element of attempting to influence testimony, the appropriate counterpart statute is actually simple assault, under 18 U.S.C. § 113(a)(5), which is not a felony, and so is not covered by the treaty.

Section 264.1 of the Canadian Criminal Code makes it a felony to "in any manner, knowingly utter[], convey[] or cause[] any person to receive a threat . . . to cause death or bodily harm to any person." (Ex. 2 at 20). Under North Dakota law, it is a class

C felony to threaten to commit any crime of violence or act dangerous to human life, with intent to place another human being in fear for that human being's or another's safety.  While the conduct alleged would not be sufficient under the federal law upon which the United States relies, it would be sufficient to constitute terrorizing under North Dakota law.   The dual criminality requirement is therefore met as to the charge of uttering threats.

<u>Child Pornography</u>

The United States identifies the following counterpart statutes to the Canadian law under which the pornography charge is made: 18 U.S.C. § 2252(a)(4)(B)(possession of visual depiction involving use of minor engaging in sexually explicit conduct), 18 U.S.C. § 2252A(a)(5) (possession of child pornography), and N.D. Cent. Code § 12.1-27.2-04.1 (possession of photographs or visual representations that include sexual conduct by a minor).  Ritzo alleges those statutes are inadequate to establish dual criminality, because the Canadian crime does not include an element of "knowing" possession.

The United States alleges that, even though the Canadian statute itself may be broader than United States law, there is sufficient evidence of Ritzo's intent to make the conduct criminal under United States law.  This Court concludes that, so long as evidence of Ritzo's intent meets the probable cause requirement,

Ritzo's actions would be a crime under United States law, and the dual criminality requirement would again be satisfied.

**Probable Cause**

Determination of probable cause in an extradition matter is similar to determinations made in preliminary hearings. The question to be determined is not whether Ritzo is guilty of the charges, but whether there is "competent legal evidence which would justify his apprehension and commitment for trial if the crime had been committed" in this jurisdiction. *Ortiz*, 444 F.Supp.2d at 883. "Stated another way, the government must present competent evidence sufficient to justify holding an accused to await trial, not evidence sufficient to justify a conviction." *United States v. Ramnath*, 533 F.Supp.2d 662, 679 (E.D. Tex. 2008). The court is to consider the totality of the circumstances, and use a flexible, common-sense standard. *In re: Extradition of Skaftouros*, 643 F.Supp.2d 535 (S.D.N.Y. 2009). Probable cause evidence must support every element of the charged offenses. *Id*. The question is not whether Canadian prosecutors would be able to obtain convictions, but whether probable cause has been established under United States standards. *In Re: Extradition of Lui*, 939 F.Supp. 934, 952 (D. Mass. 1996).

Although the right to challenge the government's evidence is quite limited, one resisting extradition can offer evidence which explains the requesting country's proof, but not evidence which

contradicts the requesting country's proof. *See, e.g.*, *Bobadilla v. Reno*, 826 F.Supp. 1428, 1433 (S.D. Fla. 1993). Extradition has been denied, where charges are conclusory allegations unsupported by substantive evidence. *United States v. Fernandez-Morris*, 99 F. Supp.2d 1358, 1366 (S.D. Fla. 1999). Extradition has also been denied when a sole accuser's recantation was found more reliable than that person's initial accusations. *Republic of France v. Moghadam*, 617 F.Supp. 777, 783 (N.D. Cal. 1985). Extradition was also denied where, among other deficiencies in evidence, there was a lack of evidence of the specific intent that would be required under the law of United States on a similar charge. *United States v. Peterka*, 307 F.Supp.2d 1344, 1351 (M.D. Fla. 2003).

Ritzo argues that the Saskatoon charges are not supported by probable cause because they are based on statements of P.B., which are not corroborated by statements of other witnesses. Ritzo argues that P.B.'s statements are internally inconsistent, that he is not proven to be a reliable informant, and that his reliability is called into question by the fact that he was in police custody at the time he made the statements. Ritzo also asserts that there is not evidence showing force or threat in connection with the sexual assault charge. Although there are inconsistencies in the evidence, especially as to P.B.'s age and the dates of the alleged offenses, viewing the totality of the circumstances, this Court finds probable cause established as to each of the four Saskatoon

charges.  The fact that P.B. was in custody at the time of his statement is not sufficient to call his credibility into question.

As to the child pornography charge, Ritzo alleges there is insufficient evidence of "knowing" possession.  He argues there is no evidence that he was aware of the presence of pornography on the computer seized from his residence, or that he had exclusive access to that computer.  Ritzo points to the fact that only one witness, J.B., who is now deceased, alleged that Ritzo showed him child pornography.  There is evidence that Ritzo inquired about the return of the computer after it was seized, and ownership can be inferred from those inquiries.  This Court concludes that there is sufficient evidence of Ritzo's ownership of the computer to find probable cause that he knowingly possessed child pornography.

## CONCLUSION

In this Court's opinion, the evidence presented is sufficient to establish probable cause to believe that Ritzo committed the Canadian crimes with which he is charged.

This Court CERTIFIES that Ritzo is extraditable for the offenses charged in the Extradition Complaint.  The United States shall forward a copy of this Certification, a transcript of the proceedings, and copies of all documents received into evidence in this matter to the Secretary of State.

Dated this 15th day of April, 2010.

*/s/ Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge